STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ALLEN HARRIS, PLAINTIFF IN ERROR.

Submitted May 2, 1944—Decided August 2, 1944.

Before Brogan, Chief Justice, and Justices Donges and Perskie.

For the plaintiff in error, *Oliver Randolph* (*Robert Queen,* of counsel).

For the defendant in error, *William A. Wachenfeld,* Prosecutor of the Pleas; *Donald C. Fox,* Assistant Prosecutor and *C. William Caruso,* Special Assistant Prosecutor.

The opinion of the court was delivered by

Perskie, J. This is a criminal case. Plaintiff in error, defendant below, was convicted of willfully swearing falsely and was sentenced to be imprisoned in the penitentiary of Essex County for a term of eighteen months at hard labor. Defendant appeals. The judgment under review is before us on a writ of error (*R. S.* 2 :195–1), and on the entire record had upon the trial of the cause. *R. S.* 2 :195–16.

The indictment, trial and conviction were based upon the provisions of *R. S.* 2 :157–4 to *R. S.* 2 :157–8, inclusive. It would serve no helpful purpose to detail the allegations of the indictment. It should suffice to observe that the indictment alleges, in substance, that defendant did "willfully swear falsely" while under oath (*R. S.* 2 :157–4) in one or the other of the "contrary statements" (*R. S.* 2 :157–5) which he made in two different judicial proceedings, both before Judge Richard Hartshorne, while testifying in a criminal case in the Essex County Court of Quarter Sessions, one statement having been made on June 1st, 1943, and the other on June 14th, 1943. Although it is "not necessary" to prove their "materiality" (*R. S.* 2 :157–6), the contradictory statements relate to the question as to whether or not defendant had been in fact "graduated from the University of Chicago Law School" in "1927." The indictment alleges (by setting down the questions posed to defendant and his answers) that on the first occasion (June 1st, 1943), the defendant swore that he had been "graduated from the University of Chicago

Law School" in "1927," and that on the second occasion (June 14th, 1943), he swore that he was not a "graduate of any law school" although he qualified that answer several times by saying that "if" he swore as he did on the first occasion he was "mistaken," he made a "mistake."

Two days before the trial of the instant case, counsel for defendant, with leave of the court, withdrew defendant's plea of not guilty and moved to quash the indictment on the ground "that the facts charged in the indictment do not constitute the crime of false swearing as defined in title 2:157–4 and 157–8 in that there are no contradictory statements set forth in the indictment within the meaning of the statute."

At the trial no proof was offered by or for the defendant. His counsel conceded that the "statements" (in form of questions and answers) set down in the indictment were "an accurate transcript" of the stenographer's report as to what defendant had sworn to in both judicial proceedings. The defense, as indicated by counsel's opening, was that the statements made by the defendant "were not willfully false."

The stenographer who took and transcribed the testimony of defendant at both proceedings, read into the record of this case, with consent of counsel for the respective parties, the questions and answers incorporated in the indictment. That defendant testified under oath and that the proceedings were judicial were also conceded for defendant. On the record so made the trial juge submitted the case to the jury.

Defendant sets down seven assignments of error and the same number of specifications of causes for reversal. Both are identical in content.

The first is that the court erred in refusing to quash the indictment, the next five charge error in remarks by the trial judge in his charge to the jury, and the last charges error in refusing a request to charge.

1. *Refusal to quash the indictment.* This point is without merit substantively or adjectively. The denial of a motion to quash an indictment, whether in the court of first instance or in this court is a matter of judicial discretion. *State* v. *Riggs,* 92 *N. J. L.* 575, 576; 106 *Atl. Rep.* 467; *State* v. *Davidson,* 116 *N. J. L.* 325, 328; 184 *Atl. Rep.* 330. The

settled rule of law is that this discretion will not be exercised unless upon the clearest and plainest ground, but defendant will be left to a demurrer, motion in arrest of judgment, or a writ of error. *Proctor* v. *State,* 55 *N. J. L.* 472; 26 *Atl. Rep.* 804; *State* v. *Davidson, supra; State* v. *Riggs, supra* (at *p.* 576); *State* v. *Bradway,* 118 *N. J. L.* 17, 20; 190 *Atl. Rep.* 778; *Cf. State* v. *Schlueter,* 127 *N. J. L.* 496, 498; 23 *Atl. Rep.* (*2d*) 249. For review on *certiorari* see *State* v. *Then,* 114 *N. J. L.* 413, 417, *et seq.;* 177 *Atl. Rep.* 87. And since the quashing of an indictment is discretionary, the propriety *vel non* of the exercise of that discretion will not be reviewed either on strict writ of error (*R. S.* 2:195–1), or under *R. S.* 2:195–16, because not occurring at the trial. *State* v. *Simon,* 113 *N. J. L.* 521, 526; 174 *Atl. Rep.* 867; *affirmed,* 115 *N. J. L.* 207; 178 *Atl. Rep.* 728; *State* v. *Garrison,* 130 *N. J. L.* 350, 351; 33 *Atl. Rep.* (*2d*) 113; *State* v. *Lisena,* 131 *N. J. L.* 48, 49; 34 *Atl. Rep.* (*2d*) 737. *Cf. State* v. *Schlueter, supra.*

But here the indictment is valid. It charges the statutory crime of willfully swearing falsely. It is in the language of the statute (*State* v. *Tilton,* 104 *N. J. L.* 268; 140 *Atl. Rep.* 21; *Levine* v. *State,* 110 *N. J. L.* 467, 471; 166 *Atl. Rep.* 300; *Joseph A. Sigretto & Sons, Inc.,* v. *State,* 127 *N. J. L.* 578, 581; 24 *Atl. Rep.* (*2d*) 199), it explicitly "apprised" defendant of the "offense charged" (*Joseph L. Sigretto & Sons, Inc.,* v. *State, supra*), it "presents with reasonable certainty" all of the facts necessary to render the offense judicially apparent (*State* v. *Ellenstein,* 121 *N. J. L.* 304, 315; 2 *Atl. Rep.* (*2d*) 451), and it is subject to no infirmity which would prevent a proper "judgment" to be entered on it. *Cf. State* v. *Ellenstein, supra* (at *p.* 325).

2. *As to remarks by the court in his charge to the jury.* It is the settled law of this state that it is always the right and often the duty of a trial judge to comment on the evidence, and give the jury his impression of its weight and value, and such comment is not assignable for error so long as the ultimate decision on disputed facts is plainly left to the jury. *Cf. State* v. *Overton,* 85 *N. J. L.* 287, 294; 88 *Atl. Rep.* 689; *State* v. *Hauptmann,* 115 *N. J. L.* 412, 429,

*et seq.;* 180 *Atl. Rep.* 809; *State* v. *Jefferson,* 129 *N. J. L.* 308, 310; 29 *Atl. Rep.* (*2d*) 546. With these principles in mind, we have carefully examined the challenged portions of the charge, in light of the whole charge (*State* v. *Giberson,* 99 *N. J. L.* 85, 93; 122 *Atl. Rep.* 724; *State* v. *Fay,* 127 *N. J. L.* 77, 84; 21 *Atl. Rep.* (*2d*) 607), and utterly fail to find any comment made by the trial judge that transgresses this settled rule.

3. *As to refusal to charge request number 2 which reads as follows:* "If a literal construction of the words of a statute make the act absurd, it must be so construed as to avoid the absurdity. The literal import of the terms and phrases employed will be controlled by the objects which the act was designed to reach. *State* v. *Clark,* 29 *N. J. L.* 96." Conceding the accuracy of the law embraced in the request, neither its applicability nor its helpfulness to the jury is made to appear. The authority of the legislature to enact the statute under which defendant was indicted, tried and convicted, and the clear and rational purpose underlying it, have received the consideration and approval of this court. *State* v. *Ellenstein, supra* (at *pp.* 322, 323).

It was, of course, incumbent upon the state to satisfy the jury by proofs beyond a reasonable doubt that one or the other of defendant's contradictory statements was both false and willfull. *State* v. *Ellenstein, supra* (at *p.* 322). Proof of the contradictory statements made by defendant is *"prima facie"* evidence "that one or the other is false." *R. S.* 2:157–5. Defendant admitted that he made the contradictory statements while under oath during judicial proceedings. It, therefore, was open to the jury to find beyond a reasonable doubt, as it did, that defendant swore falsely when in the first proceeding he testified that he had been graduated from the University of Chicago Law School. From the proof of the falsity of that statement it was also open for the jury to find beyond a reasonable doubt, as it did, that this statement was also willfull.

As defined in the statute, "Willfull shall * * * be understood to mean intentional and knowing the same to be false." *R. S.* 2:157–8. We think that it was clearly open to

the jury to find, in the circumstances, beyond all reasonable doubt that defendant intentionally and willfully swore falsely in the first proceedings. Surely defendant intended that the jury should believe his sworn statement that he had been graduated from the University of Chicago Law School in 1927, otherwise he would not have so sworn. Surely no one better than defendant knew, by 1943, that he swore falsely.

It was for the jury to appraise the probative value of defendant's repeated statement in the second proceeding (June 14th, 1943) that "if" he swore as he admitted he did on the first occasion, he was "mistaken," he made a "mistake." Who better than he knew that he had sworn both falsely and knowingly so?

The trial judge in an accurate and fair charge submitted the case to the jury on the issues under the statute and the proofs amply support the result reached.

Judgment is affirmed, with costs.