**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0349-18T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RENE M. JACKSON,

     Defendant-Appellant.

_____

Submitted March 24, 2020 – Decided May 12, 2020

Before Judges Yannotti and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-04-0874.

Joseph E. Krakora, Public Defender, attorney for appellant (Janet A. Allegro, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant appeals from the August 3, 2018 order denying his petition for post-conviction relief (PCR) after an evidentiary hearing. He contends trial counsel was ineffective in advising defendant not to testify at trial and in failing to fully inform him of the substance of a witness's statement, which defendant states resulted in him rejecting a favorable plea offer. We affirm.

We derive the facts from our prior decision in the direct appeal. State v. Jackson, No. A-5462-14 (App. Div. Dec. 16, 2016).

On the night of these events, defendant was playing dominos in the basement of a residence with eight or nine other people. After defendant lost a couple of games, he got angry with S.F.[1] and started to punch him.

> V.S. and J.S. stepped in and separated defendant from S.F. The witnesses gave differing accounts as to what happened next. S.F. testified that defendant threatened him, stated that he was going to shoot him, and left to go outside. V.S. and J.S. said that S.F. tried to attack defendant with broken bottles. They both testified that V.S. took defendant outside to break up the fight, and that S.F. followed them outside to continue the fight.
>
> S.F. testified that it was around midnight when he left the basement and went outside. According to S.F., defendant approached and pointed a gun at him. S.F. stated that V.S. struggled with defendant and disarmed

---

[1] We use initials to protect the confidentiality of individuals involved in this matter.

A-0349-18T3

him. . . . After the incident, defendant departed, and S.F. called the police.

V.S. testified that S.F. had come outside holding a broken glass bottle and that defendant went to his car to retrieve a red steering wheel lock club to defend himself. . . .

The police arrived . . . . [and] questioned S.F., who identified defendant by name and showed the police defendant's car, which was parked near the house. Later that day, the police arrested defendant and towed his car.

Thereafter, defendant provided a recorded statement to the police . . . . Defendant told the police he owned a registered Smith & Wesson, 9mm handgun, which he kept in the trunk of his car. The weapon and a gun magazine were found in the glove compartment of defendant's car.

[Id., slip op. at 1-4.]

In addition, in the recorded statement,

Defendant admitted he got into an altercation with S.F. while playing dominos, and that the dispute continued out on the street. Defendant denied that he pointed his handgun at S.F. He said that S.F. attacked him with a broken bottle, and he defended himself, using the lock club device from his steering wheel.

[Id., slip op. at 4.]

A-0349-18T3

Defendant was charged in an indictment with fourth-degree aggravated assault, in violation of N.J.S.A. 2C:12-1(b)(4); and second-degree possession of a firearm for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a).[2]

During the trial, S.F. identified the gun found in defendant's car as the gun defendant pointed at him on the night of these events. After the State played defendant's recorded statement for the jury, it rested its case on January 15, 2015. The jury was instructed to return on January 21, 2015.

The day after the State rested, Detective Michael Gilmore of the Essex County Prosecutor's Office spoke with Se.F., who was listed as a defense witness. Se.F. told Gilmore that "defendant had asked him to testify falsely that he, S.F., and defendant had gone to a gun firing range earlier during the day [of the offenses]." Jackson, slip op. at 4. This testimony would establish that S.F. knew defendant owned a handgun before the altercation. Se.F. also stated "defendant told him [that] he went back to his car to get his gun so that he could confront S.F." Id., slip op. at 5.

When the jury reconvened, the assistant prosecutor asked to reopen the State's case so he could call Se.F. as a witness and question him about the information he had given Gilmore. The prosecutor argued that defendant and

---

[2] An additional count was dismissed prior to trial.

A-0349-18T3

Se.F. knew the statement about the gun range was false, noting Se.F.'s statement that defendant had phoned him several times "to that same effect." Ibid.

> The [trial] judge noted that after obtaining [Se.F.'s] recorded statement, the State had tendered a plea offer to defendant and his attorney. The assistant prosecutor noted that if defendant pled to fourth-degree knowingly pointing a gun at S.F., as charged in the indictment, the State would recommend a sentence of eighteen months of incarceration, with an eighteen-month period of parole ineligibility. Defense counsel told the judge he had discussed the offer with defendant, and defendant had rejected it. The judge questioned defendant and he confirmed that he had rejected the plea offer.
>
> [Id., slip op. at 6.]

Se.F. testified outside the presence of the jury, confirming he had given Gilmore an oral statement and the transcription of the statement was accurate. After Se.F. stated he would testify "consistently" with his prior oral statement, the judge granted the State's motion to reopen the case. Id., slip op. at 7.

Before the jury, Se.F. stated he had known defendant for about nine years and they had been "close friend[s]" for more than five years. Ibid. He denied that on the evening of the altercation with S.F., defendant told him that "he had gone to his car to get a gun." Ibid. Se.F. further testified that defendant called him on January 15, 2015 asking him to testify for the defense but "did not tell him what to say." Ibid.

A-0349-18T3

Se.F. was questioned about his statement to Gilmore in which Se.F. stated defendant had called and "basically told me what to say and how to testify in his defense stating that when asked to say, yes, we had been to the range . . . which is not true." Id., slip op. at 7-8. Se.F. conceded he was not at the firing range on the date in question, but defendant wanted him to testify to that effect. He confirmed that the statement he gave to Gilmore was true. Id., slip op. at 8.

After the defense rested its case, the trial court confirmed with defense counsel that defendant was not going to testify. Defendant agreed in the court's questioning of him that he made the decision not to testify after speaking to defense counsel and that he was not forced, coerced or pressured in any way to make the decision.

Defendant was convicted on both counts. His motion for a new trial was denied. We affirmed his convictions. Id., slip op. at 1.

After defendant filed his pro se PCR petition, assigned counsel presented a supplemental brief. Pertinent to this appeal, defendant contended counsel was ineffective in not permitting him to testify on his own behalf and in failing to provide defendant with Se.F.'s entire statement during trial.

The PCR court granted defendant's request for an evidentiary hearing, limited "to determine whether trial counsel rendered ineffective assistance of

6

counsel by advising [defendant] not to testify on his own behalf." At the hearing, defendant and his trial counsel testified, along with the assistant prosecutor who tried the case.

In an August 3, 2018 written decision, the PCR court denied the petition. After finding all of the witnesses to be credible, the court analyzed defendant's arguments in light of the Strickland[3] standard.

In addressing defendant's assertion that trial counsel precluded him from testifying, the court found defendant had not demonstrated trial counsel's representation fell below the objective standard of reasonableness. The court stated:

> [Defense counsel] testified that he would not prohibit a defendant from testifying at trial. [Defense counsel] believed that [defendant] would be charged with witness tampering if he chose to take the stand on his own behalf, and he properly advised his client regarding this understanding. The strategic decision of counsel to fully inform [defendant] of the perceived ramifications of testifying does not fall below the standard in Strickland.

Furthermore, the PCR court stated,

> Even if trial counsel's performance had fallen below the objective standard of reasonableness, . . . [defendant] has the burden to show that but for counsel's unprofessional error, the results would have been

---

[3] Strickland v. Washington, 466 U.S. 668 (1984).

A-0349-18T3

different. Here, [defendant] testified that he held the belief that his testimony could have impacted the jury, resulting in a different outcome. However, . . . [w]itnesses testified about the incident in this matter, including one witness who testified that [defendant] asked him to falsely testify on [defendant's] behalf. There is not a reasonable probability that the outcome would have been different had [defendant] testified.

Defendant presents the following issues for our review:

I. THE COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF SINCE TRIAL COUNSEL'S FAILURE IN ADVISING DEFENDANT NOT TO TESTIFY ON HIS OWN BEHALF RESULTED IN INEFFECTIVE ASSISTANCE OF COUNSEL

II. TRIAL COUNSEL'S FAILURE TO ALLOW DEFENDANT TO BE FULLY AWARE OF [SE.F.'S] STATEMENT AND TO LISTEN TO IT RESULTED IN DEFENDANT'S DENIAL OF A FAVORABLE PLEA OFFER AND TRIAL COUNSEL WAS THUS INEFFECTIVE

To prevail on an ineffective assistance of counsel claim, a defendant must satisfy a two-pronged test. Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58 (1987). A defendant must establish both that his or her counsel's performance was deficient, and that the deficiency prejudiced him or her during trial. Strickland, 466 U.S. at 687.

The first prong of Strickland requires a defendant to establish "that counsel's performance was deficient[,]" a showing that requires "errors so

serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Ibid. This entails determining "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. Importantly, it is defendant's burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" State v. Harris, 181 N.J. 391, 431 (2004) (quoting Strickland, 466 U.S. at 689). But, a mere failure of trial strategy is not grounds for a finding of ineffectiveness. State v. Sheika, 337 N.J. Super. 228, 243 (App. Div. 2001) (citing State v. Davis, 116 N.J. 341, 357 (1989)). Therefore, only mistakes that amount to a "mockery of justice" cross the threshold of ineffectiveness. State v. Bonet, 132 N.J. Super. 186, 191 (App. Div. 1975).

Under the second prong, a defendant must demonstrate "that the deficient performance prejudiced the defense[,]" a showing which requires that the errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. A defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 694). A "reasonable probability" is one that is "sufficient

to undermine confidence in the outcome." Ibid. (quoting Strickland, 466 U.S. at 694). However, "[i]t is not enough for the defendant to show that the error or errors had some conceivable effect on the outcome of the trial." Sheika, 337 N.J. Super. at 242.

In our review of a PCR court's determination, we defer to the court's factual findings, including credibility determinations, if they are supported by "adequate, substantial and credible evidence." Harris, 181 N.J. at 415 (quoting Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

Defendant argues his trial counsel was ineffective when he advised him not to testify on his own behalf at trial. He contends that his testimony would have only helped his case. We are unconvinced.

The record is clear that defendant advised the trial court it was his uncoerced, voluntary decision not to testify, that he discussed the decision with trial counsel, and that he was satisfied with the services of his counsel. In addition, counsel's advice to defendant to refrain from testifying was a rational strategic decision. He would have been confronted with Se.F.'s contradictory testimony and subjected to possible witness tampering charges.

Defendant has not shown that trial counsel committed "errors so serious that [he] was not functioning as the 'counsel' guaranteed [to] . . . defendant by

A-0349-18T3

the Sixth Amendment." Strickland, 466 U.S. at 687. Furthermore, defendant has not established the outcome would have been any different had he testified. To the contrary, as stated, his testimony might have led to the imposition of additional charges.

Defendant also asserts he was denied the effective assistance of counsel because he was not sufficiently informed of the entirety of Se.F.'s statement when defendant decided to reject a plea offer. Because the PCR court did not specifically address this argument in its ruling, defendant requests we remand for a consideration of his contention.

A careful review of the record satisfies us that a remand is not warranted. On January 21, 2015, when the State sought to reopen its case to present the testimony of Se.F., the assistant prosecutor described to the court, while defendant was present, the specifics of the statement obtained from Se.F., including defendant's request that Se.F. give false testimony.

The prosecutor also placed a plea offer on the record. Defense counsel advised the trial judge he had discussed the offer with defendant. The judge stated to defendant directly: "You understand what this evidence will do to you; right? . . . It's extremely prejudicial . . . ." The judge also explained to defendant the exposure he faced if he did not accept the plea offer for a fourth-degree

11

offense but was instead convicted on the second-degree offense. Defendant stated he had discussed the plea offer with his attorney and he did not want to accept it.

The record reflects defendant was fully apprised of the damaging testimony Se.F. would be giving to the jury. He confirmed to the judge he understood the significance of rejecting the plea offer and he made the decision after discussion with counsel. His argument he was not afforded the effective assistance of counsel in considering and rejecting the plea offer is without merit.

We are satisfied the PCR court's denial of the petition was supported by the credible evidence in the record. Defendant did not demonstrate trial counsel was ineffective under the Strickland-Fritz test.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION